IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

George Karges,                    )      C. A. No. 2:08-2163-MBS-RSC
                                  )
                Plaintiff,        )
                                  )
        -versus-                  )      **REPORT AND RECOMMENDATION**
                                  )
Charleston County Sheriff's       )
Office and J. Al Cannon, Jr.,     )
as Sheriff of Charleston          )
County,                           )
                                  )
                Defendants.       )

This employment discrimination action is before the

undersigned United States Magistrate Judge for a report and

recommendation on the defendants' motion for summary judgment. 28

U.S.C. § 636(b).

On June 10, 2008, the plaintiff, George Karges, sued his

former employer, Al Cannon, the Sheriff of Charleston County, and

the Charleston County Sheriff's Office[1] and brought the following

causes of action: 1) Retaliation in violation of the Civil Rights

Act of 1964, Title VII, 42 U.S.C. §2000e et seq; 2) Hostile Work

Environment in violation of Title VII; 3) Constructive Discharge

in retaliation for protected activity in violation of Title VII;

Wrongful Discharge in violation of South Carolina public policy

4) Breach of employment contract.

---

[1] Defendant "Charleston County Sheriff's Office" is not a
sui juris entity capable of being sued in its own right and
should be dismissed as a named defendant.

1

Discovery is closed. The defendants' motion for summary judgment was filed on July 10, 2009. The plaintiff filed an opposition on August 10, 2009. The defendants filed a reply on September 3, 2009, and the plaintiff filed a surreply on September 8, 2009. Oral arguments were had before the undersigned on September 9, 2009. Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

### FACTS

The relevant facts taken in a light most favorable to the plaintiff with all reasonable inferences drawn in favor of the plaintiff as the non-moving party, to the extent supported by the record, are as follow.

Plaintiff George Karges is a former lieutenant with the Charleston County Sheriff's Office. Sheriff Al Cannon employed Karges in 1984 and Karges was promoted to Lieutenant in 2004. Karges' retired on March 7, 2008. His retirement is the constructive discharge about which Plaintiff complains.

On June 28, 2007, Karges reported the alleged sexual

harassment of a female, Deputy Sarah Midgett, to Internal Affairs. Karges alleges that as a result of his reporting the alleged sexual harassment of Midgett, he was subjected to retaliation, including a three-day suspension and prohibition from participating in off duty work assignments. Further, Karges alleges that he was removed from certain special assignments, those being participation on the Vehicle Collision Review Board and assignment to the Promotional Process Coordinator position, as a result of his reporting Midgett's allegations. Finally Karges alleges that his reporting the alleged sexual harassment led to Cannon's employees creating a hostile work environment that forced him to retire.

Events pertaining to Karges that occurred both before and after his report of the alleged sexual harassment of Midgett, including the dates and sequence of the events, are important to Karges' claims and are as follow[2]:

February 2006 through March 2007:
    Karges' supervisor, Captain Michael Stanley, experienced various problems with Karges' work performance.

March 11, 2007:
    Stanley requested assistance from Internal Affairs regarding his investigation of Karges' conduct. Def. ex. C, memorandum from Stanley to Chief Inspector Fields.

March 23, 2007:
    Karges submitted a written request to transfer out of

_____

    [2]The dates of the alleged protected conduct and of the filing of the EEOC claim are highlighted in bold.

4

Stanley's unit "due to personal and professional conflicts with my immediate supervisor [Stanley]." Karges also submitted a written resignation from his special assignment as Promotional Process Coordinator. Likewise, Karges submitted a written resignation from the special assignment as Exposure Control Officer and Trainer that day. Karges subsequently withdrew the request to transfer and both resignations. Def. ex. D, E, F.

April 3, 2007:
Stanley issued a Written Letter of Instruction ("LOI") to Karges which outlined the various problems with Karges' job performance, including those that Stanley discussed with Karges in March.

April 6, 2007:
Karges submits a written complaint to Internal Affairs relating to the LOI he received on April 3rd from Stanley. Karges alleged that he was being subjected to a "hostile and unfair working relationship and environment" based on Stanley's criticism of his work performance and requested that the LOI be withdrawn. Def. ex. G.

April 12, 2007:
Karges filed a formal six page grievance addressed to Stanley complaining about the April 3, 2007, LOI, asks to have it removed from his file, and asks for a mediation between the two of them to be conducted by Major Thomas Honan. Def. ex. H.

April 18, 2007:
Internal Affairs responded to Karges' complaint about the LOI from Stanley and the hostile work environment and explained that following an investigation it concluded that Stanley was performing his duty as Karges' supervisor and no unlawful harassment occurred. Def. ex. I.

April 20, 2007:
Stanley responded to Karges' grievance and denied Karges' request to rescind the LOI or remove it from his file.

April 22, 2007:
Karges submitted another grievance, this time to Major Thomas Honan, complaining of Stanley's April 3, 2007, LOI. Def. ex. EE.

April 20, 2007, to June 27, 2007:
Karges believed that Stanley continued to create a "hostile

work environment" for him. Pl. Dep., P. 108, L. 3 - 9; P. 109, L. 5 - 12; P. 114, L. 20 through P. 115, L. 2.

**June 27, 2007:**

**Karges learned from Deputy Sarah Midgett, who had worked in his area at a prior time, that she felt harassed by Deputy Robert Smith, and the next day Karges reported Midgett's complaint of harassment to Inspector Kevin Whited in Internal Affairs. Karges' generally characterizes Midgett's complaint as one of sexual harassment. Internal Affairs opened an investigation into Midgett's complaint about Smith that day.**

June 28, 2007, through July 2, 2007:

Karges received three or four anonymous threatening telephone calls telling him that he was "in trouble" and he should "watch his six." During this time, Karges reported the telephone calls to Whited. Pl. Dep., P. 65, L. 19 through P. 68, L. 6.

July 1, 2007:

Karges called Sheriff Cannon at home to ask for a meeting about the harassing telephone calls and to tell him about Deputy Smith's conduct toward Midgett.

July 2, 2007:

Karges, along with Whited and Inspector Mark Fields met with Sheriff Cannon and Fields briefed Cannon on the investigation of Midgett's allegations and the phone calls to Karges. Subsequently, Cannon asked to meet privately with Karges and during the meeting Cannon told Karges that "before the day is over, I may fire you." Cannon deposed that he made this statement to Karges because he believed that Karges was trying to subvert the Internal Affairs investigation regarding Midgett's complaints. After this meeting, Sheriff Cannon make no further comments to Karges and had no further conversations with him through the date of Karges' retirement on March 7, 2008. Sheriff Cannon Dep., P. 57, L. 7-18.

July 6, 2007:

One of Karges' co-workers learned of a complaint from Force Protection Industries, Inc., a company which designs and builds armored vehicles used by the military, that Karges was allegedly sleeping while on shift at his off-duty assignment as a security guard for Force Protection. Def. ex. K.

July 20, 2007:
Chief Deputy Sowers received information that Karges had made improper disclosures to potential promotion candidates relating to Karges' duties as Promotional Process Coordinator. Id.

July 26, 2007:
An Internal Affairs investigation was opened into Karges' disclosures relating to the promotional process and his allegedly sleeping while on duty at Force Protection. Id.

July 30, 2007:
The Internal Affairs investigation into Midgett's complaints concluded that Smith's conduct did not constitute sexual harassment, but concluded that Smith's conduct was, nevertheless, inappropriate conduct for an officer.

July 30, 2007:
Smith receives discipline for his conduct.

August 28, 2007:
Internal Affairs investigation into Karges' behavior concludes with a determination that Karges violated numerous rules and directives relating to inappropriate promotional process disclosures and sleeping during a security assignment at Force Protection. The conclusion is forwarded to Sowers for action.

September 19, 2007:
Karges is replaced on the Vehicle Collision Review Board by a Traffic Division Lieutenant in keeping with Cannon's normal practices.

September 25, 2007:
Cannon issues a Commendation/Special Recognition Award to Karges for his work and efforts in August 2007 related to an important training exercise.

October 16, 2007:
Karges is removed from the Promotional Process Coordinator assignment.

October 24, 2007:
Karges is issued a three-day suspension and six-month probation from working off-duty assignments relating to his improper disclosures to candidates about the promotional process and his sleeping on the job at Force Protection.

Also Karges files a written grievance relating to his suspension and his removal from the Vehicle Collision Review Board and promotional process assignments were retaliatory and related to his report of Midgett's complaints about harassment she was subjected to by Smith. Notably, Karges admits to several of the accusations and he does not argue that he should not be disciplined but believes that lesser discipline was appropriate.

**October 26, 2007:**
**Karges signs and files a Charge of Discrimination with the EEOC alleging that he was the object of retaliation between June 27, 2007, and October 26, 2007. Karges never amends or supplements the Charge and does not file a second charge.**

November 6, 2007:
Karges' grievance is denied by Major Thomas Honan.

November 13, 2007:
Karges withdraws his grievance before it goes any further up the chain of command.

November 26, 2007:
Stanley issues Karges a Letter of Reprimand.

November 30, 2007:
Stanley issues Karges a Letter of Instruction.

December 4, 2007:
Karges submits an application for a police officer position with the Town of Summerville and indicates his reason for leaving his employment with Cannon is "Plan for Retirement - work closer to home."

December 12, 2007:
Karges submits an application for a police officer position with the City of North Charleston and indicates his reason for leaving the Sheriff's office is "Plan for Retirement. New Job Opportunity."

December 13, 2007:
Karges prepares and submits an Employment Initial Inquiry Questionnaire to the South Carolina Human Affairs Commission.

December 17, 2007:
Karges submits application for a police officer position with the City of Goose Creek.

December 18, 2007:
    Karges submits application for deputy sheriff position with the Berkeley County Sheriff and indicates his reason for leaving his present employment is, "I want to retire from my position due to a filed EEOC employment action."

January 8, 2008:
    Karges accepts police officer position with City of Goose Creek.

February 11, 2008:
    Stanley issues Karges a Letter of Suspension.

February 13, 2008:
    Karges submits a "Compensation Study Grievance" to Cannon.

February 15, 2008:
    Karges submits Letter of Retirement to Cannon and did not return to work thereafter.

February 20, 2008:
    Cannon responds to Karges' Letter of Retirement.

March 7, 2008:
    Karges' retirement date[3].

March 24, 2008:
    Karges begins working for City of Goose Creek Police Department.

June 10, 2008:
    Karges files the instant action.

## Grounds for Summary Judgment

Defendant argued that it is entitled to judgment as a matter of law on all causes of action because:

1.) Defendant Charleston County Sheriff's Office is not a sui juris entity capable of being sued.

2.) Karges's own actions undercut his retaliation assertion that

---

[3] Karges deposed that he used up annual leave and compensatory time off so that his official retirement date was after he actually stopped working.

9

the suspension, Cannon's threat, his removal from collateral duties or probation from performing off-duty work assignments, all which occurred between June 28, 2007, and October 26, 2007, would dissuade a "reasonable employee" from filing or supporting a discrimination complaint because Karges filed his Charge subsequent to his filing an internal grievance related to the October 24, 2007, Letter of Suspension.

3.) The disciplinary actions did not rise to the level of a materially adverse employment action. Karges admits that Cannon never followed through on his threat.  Karges' suspension and probation were for a short period of time, did not result in loss of benefits or rank, and pertained only to voluntary off-duty assignments.

4.) Even assuming arguendo that Karges suffered an adverse employment action, such as the three-day suspension, it was unrelated to any protected activity. Karges himself admits that his actions at Force Protection deserved some discipline.

5.) Any claim of retaliation occurring after October 27, 2007, is beyond the scope of Karges' EEO Charge and the court should not review the claim on the merits.

6.) There is no separate Title VII cause of action for hostile environment, and even if he is asserting a claim independent of his retaliation or constructive discharge claim, he is a white male and not protected.

7.) If plaintiff is attempting to bring a claim under 42 U.S.C. §1981, there is not private right of action against public defendants.  Jett v. Dallas Independent School District, 491 U.S. 701 (1989).

8.) Plaintiff cannot make a prima facie case of constructive discharge because he cannot show the defendant deliberately sought to force the plaintiff to retire, and because the plaintiff cannot show subjectively intolerable working conditions. He waited to retire until over a month after he got another job.

9.) Plaintiff does not indicate what contract he is suing on, so that the breach of contract claim fails.

10.) Defendant is an elected official so cannot get punitive damages under Title VII.

## APPLICABLE EMPLOYMENT DISCRIMINATION LAW

### Retaliation

Karges alleges that he was retaliated against for reporting Lt. Sarah Midgett's sexual harassment complaint to the defendant.

Section 2000e-3(a) of Title 42 of the United States Code provides, in relevant part,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

A plaintiff may demonstrate retaliation through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff  must satisfy the "three-step proof process established in McDonnell Douglas Corp. v. Green." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998), citing, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  First, the plaintiff must "establish, by preponderance of the evidence, a prima facie case of retaliation." Id.  The plaintiff establishes a prima facie case by demonstrating (1) that he engaged in protected activity, (2) that he suffered an adverse employment action; and (3) that there is a causal nexus between the protected activity and the adverse action. Brockman v. Snow, 217 F. App'x, 201, 206 (4th Cir. 2007) (citing McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991)).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of retaliation by articulating a non-retaliatory reason for his action. Laughlin, 149 F.3d at 258 (citing cases). If the defendant "meets the burden of production, the presumption of retaliation created by the prima facie case 'drops from the case,'" and the plaintiff then "bears the ultimate burden of proving" that he was the victim of retaliation. Id. (internal citation omitted.)

The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern & Santa Fe Rwy. v. White, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345. (2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67 (emphasis added). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted).

## Constructive Discharge

Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job. A plaintiff alleging constructive discharge must prove two elements: (1) deliberateness of the employer's action; and (2) intolerability of the working conditions." <u>Munday v. Waste Mgmt. of N. Am.</u>, 126 F.3d 239, 244 (4th Cir. 1997).

"Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit...." <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir.1985). "Intolerability of working conditions ... is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign... . An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress." <u>Id.</u> In short, a plaintiff must show that he had no choice but to resign.

## Administrative Exhaustion

The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. <u>King v. Seaboard Coast Line R.R.</u>, 538 F.2d

13

581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge.'") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec., 532 F.2d 359, 365 (4th Cir. 1976)). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred). "Thus, a claim in formal litigation will generally be barred if the [administrative] charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

However, "a plaintiff need not exhaust his administrative remedies for retaliation that grows out of an earlier EEOC charge. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). Administrative remedies must be exhausted, however, when the alleged retaliation could have been raised in the original EEOC complaint. Ang v. Procter & Gamble Co., 932 F.2d 540, 546-47 (6th

Cir. 1991), citing <u>Steffen v. Meridian Life Ins. Co.</u>, 859 F.2d

534, 545, n. 2 (7th Cir. 1988), cert. denied, 491 U.S. 907, 109

S.Ct. 3191, 105 L.Ed.2d 699 (1989); <u>Riley v. Technical and</u>

<u>Management Servs. Corp., Inc</u>., 872 F.Supp. 1454, 1460 (D.Md.

1995)(plaintiff must exhaust administrative remedies when the

alleged retaliation could have been raised in the original

complaint), aff'd, 79 F.3d 1141, 1996 WL 106744 (4th Cir. 1996)."

<u>McMillan v. South Carolina Dept of Corrections</u>, 16 F.Supp. 2d

635, 646 (D.S.C. 1997).

The "reasonable relation" theory is no longer good law in

cases involving discrete, easily identifiable incidents such as

"'termination, failure to promote, denial of transfer, or refusal

to hire,'" each of which "'constitutes a separate actionable

unlawful employment practice.'" <u>Martinez v. Potter</u>, 347 F.3d

1208, 1210 (10th Cir. 2003) (quoting <u>Nat'l R.R. Passenger Corp.</u>

<u>v. Morgan</u>, 536 U.S. 101, 110-14, 122 S.Ct. 2061, 153 L.Ed.2d 106

(2002)). A plaintiff must timely file an administrative charge

in order to preserve a claim based on a "discrete discriminatory

act [ ]." <u>Morgan</u>, 536 U.S. at 113, 122 S.Ct. 2061. Courts

recognize that a constructive discharge may be akin to a hostile

environment claim in that a constructive discharge theory

generally rests on a series of discriminatory events and

incidents. But when the constructive discharge is complete-i.e.,

when the employee resigns-the discharge is most akin to a

wrongful discharge by the employer, which is a discrete and
identifiable act. See Draper v. Coeur Rochester, Inc., 147 F.3d
1104, 1110 (9th Cir. 1998) ("Constructive discharge is, indeed,
just one form of wrongful discharge."); Young v. Nat'l Ctr. for
Health Servs. Research, 828 F.2d 235, 238 (4th Cir. 1987)
(characterizing a constructive discharge as "a distinct
discriminatory act for which there is a distinct cause of
action"). Accordingly, a claim of constructive discharge
requires filing an administrative charge. See Butler v. Potter,
345 F.Supp.2d 844, 853 (E. D. Tenn. 2004).

## DISCUSSION

A review of the record and relevant case law indicates that
the defendants' motion for summary judgment should be granted on
all grounds.

### Retaliation Claim

The defendant seeks judgment on the retaliation cause of
action and argues that any disciplinary actions against Karges
did not rise to the level of a materially adverse employment
action, that Karges admits that Cannon never followed through on
his threat, and that the disciplinary actions were for a short
period of time, did not result in loss of benefits or rank, and
pertained only to voluntary off-duty assignments.

For the purposes of this motion, the defendant concededs the
plaintiff engaged in protected conduct when he reported Midgett's

16

allegations and filed his own charge with the EEOC.  However

undisputed evidence is that the plaintiff can not show that a

reasonable employee would have found the challenged action

following the Midget report materially adverse, "which in this

context means it well might have dissuaded a reasonable worker

from making or supporting a charge of discrimination." <u>Burlington</u>

<u>Northern & Santa Fe Rwy. v. White</u>, 548 U.S. 53, at 68, 126 S.Ct.

2405, 165 L.Ed.2d 345. (2006)[4].

There is no evidence that the action the plaintiff complains

of was materially adverse.  Besides the usual yardsticks of

"materially adverse," that is loss of rank, pay, status or other

injury or harm, the undisputed facts are that the actions

complained of by Karges were common place in his career.  They

were not causally related to the protected conduct, but rather

admittedly were related to other discrete events, such as off-

duty conduct, inappropriate promotional process disclosures,

allegations which Karges did not contest[5], and admittedly routine

changes.

Thus Karges fails to establish even a prima facie claim of

retaliation.

---

[4]Following the alleged acts, the plaintiff was not dissuaded
from filing a claim and actually did file a charge of
discrimination.

[5]He only contested the discipline imposed because of the
admitted conduct.  That is he thought the discipline should have
been different.

Even if these limitations are overlooked and a prima facie case is presumed, the same facts and events create non-retaliatory explanations for the defendant's conduct, and the plaintiff has forecast no evidence that he can bear the ultimate burden of proving that he was the victim of retaliation.

The retaliation cause of action "does not permit employees to immunize improper behavior simply by filing an EEOC complaint." Glover v. South Carolina Law Enforcement Div., 170 F. 3d 411 at 414 (4th Cir. 1999) (citing Brown v. Ralston Purina Co., 557 F.2d 570, 572 (6th Cir.1977) which held that "an EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice"). The Fourth Circuit also distinguished two cases noting that "[a] careful reading of [the distinguished] cases ... reveals that the adverse actions were predicated on legitimate, nondiscriminatory reasons and not on the protected activity itself." Id. at 415 (citing Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1390-91 (8th Cir.1988) and Jones v. Flagship Int'l, 793 F.2d 714, 726-29 & n. 14 (5th Cir.1986)).

With regard to any allegations of retaliation arising after the October 26th EEOC charge, that cliam must fail for failure to exhaust administrative remedies as to those allegations. Despite the plaintiff's assertion that the retaliation was a continuing violation, it is well settled that retaliation is a discrete act

and not a continuing event.  Martinez v. Potter, 347 F.3d 1208,
1210 (10th Cir. 2003); citing Nat'l R.R. Passenger Corp. v.
Morgan, 536 U.S. 101, 110-14, 122 S.Ct. 2061, 153 L.Ed.2d 106
(2002).

In short Defendant Cannon is entitled to summary judgment on
all of the plaintiff's retaliation claims.

Constructive Discharge

The essence of a constructive discharge claim is that an
employer deliberately forces an employee to resign by making the
working conditions intolerable.  The claim has two elements on
which the plaintiff bears the burden of proof.  The plaintiff
must show, one, that the employer's actions were deliberate, and,
two, that the working conditions were intollerable.

Here the plaintiff fails to forecast evidence of
intollerability.  The plaintiff alleges that the constructive
discharge in March 2008 was the result of his reporting the
Midget complaint on June 27, 2007.  However the undisputed facts
are that Karges submitted an application for employment to the
Town of Suimmerville in December 2007 indicating he intended to
retire from the defendant's employ and wanted to work closer to
home.  He continued to seek other employment and on January 8,
2008 accepted employment with the City of Goose Creek.  Still he
continued to work for the plaintiff until he tendered his
retirement letter on February 15, 2008, and actually retired on

19

March 8, 2008. Thereafter he began working in Goose Creek on March 20, 2008, and filed this lawsuit on June 10, 2008.

It would not be reasonable to conclude or permissible to infer from these facts that the plaintiff did not intend to retire, sought other employment because of intolerable working conditions, and did not retired at a time other than of his own choosing. There is no evidence that the plaintiff was pressured in to resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. There is no evidence that this plaintiff, or a reasonable person in the plaintiff's position, would have been compelled to resign. In short the plaintiff has not shown that he had no choice but to resign.

The defendant is entitled to summary judgment on this claim based solely on the law and the undisputed facts before the court. Additionally, and as further support for summary judgment, it is apparent that the alleged constructive discharge is barred as administratively unexhausted. It has never been presented in any complaint for administrative review.

### Wrongful Discharge Against Public Policy, Hostile Work Environment, and Breach of Contract

The plaintiff does not by brief or otherwise elaborate on his claim of wrongful termination against public policy. However to the extent that it rests on claims of illegal, forced

resignation as a result of intolerable working conditions, the claim fails for the same reason as the constructive discharge claim.

The plaintiff asserts a hostile work environment arising out of the same facts as the retaliation claim. However this does not give rise to a separate and independent claim form the retaliation claim. Further there is no allegation that the hostile work environment is based upon race or gender or that he presented this claim for administrative review other than in the guise of a retaliation claim.

Finally the plaintiff's claim of breach of contract fails because of a failure of pleading and proof.

South Carolina "has long recognized the doctrine of employment at-will." Lawson v. S.C. Dep't of Corr., 340 S.C. 346, 350, 532 S.E.2d 259, 260 (2000); Culler v. Blue Ridge Elec. Coop., Inc., 309 S.C. 243, 422 S.E.2d 91 (1992); Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213 (1985). An employee without a contract for a stated period of time is presumptively considered an employee at-will, and employers may terminate such employees at anytime. Cape v. Greenville County Sch. Dist., 365 S.C. 316, 319, 618 S.E.2d 881, 883 (2005) (noting that even this presumption can be overcome and that occasionally an employment contract for a definite period of time can be terminable at will). Employment at will may be altered by

mandatory language in an employee handbook.

However here the plaintiff has neither offered proof of an employment contract nor pled a handbook claim. In his complaint he asserts that he and the defendant entered into a contract. The defendant denies the existence of a contract, and no evidence of a contract has been presented by the plaintiff. In his opposition to summary judgment the plaintiff asserts the law that an handbook may alter the employment at will status, but he offers no handbook and does not reference evidence of any of the elements necessary to plead or prove a handbook claim.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment on all causes of action be granted. Further, it is recommended that the Charleston County Sheriff's Office be stricken from the caption hereof as not _sui juris_.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
March 5, 2010