IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| George Karges, | ) |
|                     Plaintiff, | ) C.A. No. 2:08-cv-2163-MBS |
| vs. | ) **ORDER AND OPINION** |
| Charleston County Sheriff's Office and J. Al Cannon, Jr., as Sheriff of Charleston County, | ) |
|                     Defendants. | ) |

Plaintiff George Karges filed the within action on June 10, 2008 against the Charleston County Sheriff's Office and J. Al Cannon, Jr. ("Sheriff Cannon"), as Sheriff of Charleston County (collectively Defendants), alleging: 1) retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*; 2) hostile work environment in violation of Title VII and 42 U.S.C. § 1981; 3) constructive discharge in violation of Title VII and § 1981; 4) wrongful discharge in violation of South Carolina public policy; and 5) breach of contract. This case is before the court on Defendants' motion for summary judgment, which was filed on July 10, 2009. On August 10, 2009, Plaintiff responded. On September 3, 2009, Defendants replied.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, this matter was referred to United States Magistrate Judge Robert S. Carr for pretrial handling. On March 5, 2010, the Magistrate Judge issued a Report and Recommendation in which he recommended that Defendants' motion for summary judgment be granted. The Magistrate Judge further recommended that the Charleston County Sheriff's Office be stricken from the caption of the case as not *sui juris*, not capable of suing or being sued in its own right. On March 25, 2010, Plaintiff filed objections to the

Magistrate Judge's Report and Recommendation.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. *Id.* In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

The court has considered the pleadings, motion, memoranda, deposition testimony, and other exhibits offered by the parties in support of their respective positions. The court concludes that Defendants' motion for summary judgment should be granted in part and denied in part.

## I. **FACTS**

The facts as viewed in the light most favorable to Plaintiff are as follows. On December 30, 1985, Sheriff Cannon hired Plaintiff as a police officer. On May 28, 2004, Plaintiff was promoted to the rank of Lieutenant. In late 2006, Plaintiff requested and received a transfer from the Counterterrorism Division to the Patrol Division. Plaintiff's new supervisor in Patrol was Captain Michael Stanley ("Stanley").

Between October 2006 through March 2007 Stanley allegedly observed various problems with Plaintiff's work performance at least some of which were discussed between Plaintiff and

Stanley as they arose. On March 11, 2007, Stanley requested assistance from Internal Affairs in evaluating Plaintiff's conduct in February and March of 2007 with regard to Plaintiff's scheduling of leave time. The investigation of Plaintiff's conduct later revealed that Stanley's concerns were unfounded. On March 23, 2007, Plaintiff submitted a written request to transfer out of Stanley's unit "due to personal and professional conflicts. . . ." Entry 57, Ex. D. On the same day, Plaintiff also submitted written resignations from his special assignments as Promotional Process Coordinator and Exposure Control Officer and Trainer. Plaintiff subsequently withdrew the request to transfer and both resignations and Stanley indicated that the resignations would go no further up the chain of command. On March 25, 2007, Stanley and Plaintiff discussed Plaintiff's work performance and Stanley stated: "I did not want you here in the first place and I told the staff that." Stanley Dep. 73:9-19. Stanley also told Plaintiff "[y]ou are my weakest Lieutenant and if I could get rid of you I would." *Id.*

On April 3, 2007, Stanley issued Plaintiff a non-disciplinary Written Letter of Instruction ("LOI") outlining various issues with Plaintiff's job performance, including some issues that Stanley discussed with Plaintiff in March. On April 6, 2007 Plaintiff submitted a written complaint to Internal Affairs relating to the LOI. Plaintiff alleged that he was being subjected to a "hostile and unfair working relationship and environment." He requested that the LOI be withdrawn. On April 12, 2007, Plaintiff filed a formal grievance with Stanley in response to the LOI, asking to have it removed from his file, and asking that Major Thomas Honan ("Honan") mediate the conflict. On April 18, 2007, Internal Affairs issued a response in which it concluded that Stanley was performing his duty as Plaintiff's supervisor and that Stanley's comments did not rise to the level of unlawful harassment. On April 20, 2007, Stanley responded to Plaintiff's grievance, and denied the request

3

that Stanley rescind the LOI. On April 22, 2007, Plaintiff submitted a grievance about the LOI to Honan.

On June 27, 2007, Deputy Sarah Midgett ("Midgett"), a former subordinate of Plaintiff, reported to Plaintiff that she felt harassed by Deputy Robert Smith ("Smith"). That day, Plaintiff reported Midgett's allegations to his acting supervisor Lieutenant Brock ("Brock"). When Plaintiff indicated who was involved in the sexual harassment, Brock stated that he did not need to hear any more and instructed Plaintiff to report the harassment to Internal Affairs. Also on June 27, 2007, one of Plaintiff's co-workers learned of a complaint that Plaintiff was allegedly sleeping while on an off-duty assignment as a security guard for Force Protection Industries, Inc. ("Force Protection").

On June 28, 2007, Plaintiff reported Midgett's sexual harassment complaint to Inspector Kevin Whited ("Whited") in Internal Affairs. Internal Affairs opened an investigation into Midgett's complaint that same day. All Internal Affairs investigations are reviewed by the Assistant Sheriff's office. The Assistant Sheriff is Andrene Coury-Smith ("Assistant Sheriff Coury-Smith"), who is Smith's wife. Upon learning of Midgett's complaint, Lieutenant Conkey, Midgett's supervisor, was upset that Plaintiff did not refer Midgett back to her chain of command.

Between June 28, 2007 and July 2, 2007 Plaintiff received several anonymous threatening telephone calls telling him that he was "in trouble" and that he should "watch his six." Pl. Dep at 65:19-68:6. Plaintiff reported the initial telephone calls to Whited, but after receiving more telephone calls, decided to speak to Sheriff Cannon about the issue. On July 1, 2007, Plaintiff called Sheriff Cannon at home to ask for a meeting to discuss: 1) the harassing telephone calls; 2) Smith's conduct toward Midgett; and 3) Plaintiff's concern that because Internal Affairs investigations are reviewed by Assistant Sheriff Coury-Smith's office, the investigation was not being properly

4

handled. On July 2, 2007, Plaintiff, along with Whited and Inspector Mark Fields ("Fields"), met with Sheriff Cannon. Fields briefed Sheriff Cannon on the investigation of Midgett's allegations and the phone calls to Plaintiff. Subsequently, Sheriff Cannon asked to meet privately with Plaintiff. During the meeting Sheriff Cannon told Plaintiff: "[B]efore the day is over, I may fire you . . . You're getting to where you're more trouble than you're worth." Cannon Dep. 57:15-21. Sheriff Cannon deposed that he was upset with Plaintiff and that he made this statement because he believed Plaintiff was trying to subvert the Internal Affairs investigation regarding Midgett's complaints and accuse several members of the Sheriff's Department of bias without evidence. Sheriff Cannon later deposed that he is one of the escape valves that employee can access if the Sheriff's Department is not running properly. Cannon Dep. at 49:3-10; 53:13-16.

On July 20, 2007, Chief Deputy Sowers ("Sowers") received information that Plaintiff made improper disclosures to potential promotion candidates relating to Plaintiff's duties as Promotional Process Coordinator. On July 26, 2007, an Internal Affairs investigation was opened to investigate Plaintiff's alleged disclosures relating to the promotional process and Plaintiff's allegedly sleeping while on duty at Force Protection.

On July 30, 2007, the Internal Affairs investigation into Midgett's sexual harassment allegations concluded with a determination that Smith's conduct did not constitute sexual harassment, but that Smith's conduct was, nevertheless, inappropriate conduct for an officer. Smith was suspended from his duties as a Field Training Instructor for six months, and received a letter of reprimand from Honan, which was placed in Smith's personnel file for one year.

On July 31, 2007, Plaintiff's performance review was due, but was held in abeyance until the Internal Affairs investigation into Plaintiff's conduct concluded. On August 6, 2007, Plaintiff was

interviewed by Internal Affairs regarding the allegations of improper promotional process disclosures and sleeping on duty. During this interview, Plaintiff admitted to contacting Lieutenant Martin, a former Promotional Process Chair to get his opinion about how miscalculations in promotional scores should be handled. Plaintiff also admitted to using the term "Metro Mafia," in discussing Assistant Sheriff Coury-Smith's decision on the promotion issue, but stated that it was an attempt at dry humor. Moreover, Plaintiff admitted that he was "fatigued and nodded off and was inattentive to his post" at Force Protection at the time in question. (Entry 57, Ex. A at 166:9-167:16; 174:20-177:17; Ex. K). On August 28, 2007, the Internal Affairs investigation into Plaintiff's behavior concluded with a determination that Plaintiff violated numerous rules and directives relating to inappropriate promotional process disclosures and sleeping during a security assignment at Force Protection. The conclusion was forwarded to Sowers for action.

On September 19, 2007, Plaintiff was replaced on the Vehicle Collision Review Board by a Traffic Division Lieutenant. On September 25, 2007 Sheriff Cannon issued a Commendation/Special Recognition Award to Plaintiff for his work in August 2007 related to an important training exercise. On October 16, 2007, Plaintiff was removed from his position as the Promotional Process Chair after a two-year extension of his original two-year term to enact changes in the system.

On October 24, 2007, Plaintiff was disciplined for his actions related to his disclosures to candidates about the promotional process and sleeping on duty. Plaintiff received a three-day suspension from duty and six months probation from working off-duty assignments. That same day, Plaintiff filed a written grievance with Honan relating to this discipline and his removal from the Vehicle Collision Review Board and Promotional Process Chair assignments. Plaintiff sought re-

examination of the facts surrounding his case and rescission of his discipline. Plaintiff's grievance states that Plaintiff believed that these actions were retaliatory and related to his report of Midgett's sexual harassment complaints. Plaintiff admitted to making disclosures regarding the promotional process, but disputed that he violated any orders in making such disclosures. Plaintiff also admitted to using the term "Metro Mafia" to diffuse a Sergeant's concerns about the hiring process by stating that the "Metro Mafia" decided the issue and nothing could be done about it. In addition, Plaintiff claimed that he was not sleeping on duty, but was fatigued and talking on his cell phone. Plaintiff argues that he was not supposed to be working that day at all and that he was only working as a favor to the agency because there was a mistake in the schedule. Plaintiff's grievance also states that Midgett told Plaintiff she overheard a conversation between Smith and Sergeant Anderson that Plaintiff was "going to pay for interfering with Metro's business" regarding Plaintiff's reporting Midgett's sexual harassment claims.

On October 26, 2007, Plaintiff filed a Charge of Discrimination with the EEOC alleging that he was subjected to retaliation beginning in June 27, 2007. The charge states:

I. I was hired by the above named employer on December 30, 1985, as a Charleston County Police Officer. On May 28, 2004, I was promoted to the position of Deputy Sheriff Lieutenant, the position I currently hold. From approximately June 27, 2007 through the present, I have been subjected to the following adverse employment actions in retaliation for opposing employment discrimination against a former female subordinate and for my participation in the investigation of internal and external EEO complaints she filed: 1) from August to the present and at least on three occasions, I have requested and been denied a performance appraisal which was due on July 31, 2007; 2) I was removed from specialized duties; 3) I was informed that I would be suspended for three days without pay at the convenience of the Patrol Division Commander; 4) I was told I could no longer work off-duty employment; and 5) I was threatened with termination by Sheriff Al Cannon.

II. On or about July 2, 2007, Sheriff Al Cannon's verbal response to my concerns regarding my opposition to employment discrimination of a formal female employee

> was to threaten me with termination of my employment. Captain Michael Stanley, my immediate supervisor, told me that he didn't have the time to complete my performance appraisal. On or about September 19, 2007, Captain Oliver Puckett told me that my Vehicle Collision Review Board position was a Lieutenant's position assigned to the Traffic Division. On October 16, 2007, Assistant Sheriff, Corey Smith [sic], informed me, via memorandum, that I was being replaced from the Promotional Process Coordinator position because the policy states that it is a two year appointment.
>
> III. I believe I have been discriminated against in retaliation for opposing unlawful employment practices, and for being part of internal and external EEO investigations, in violation of Section 704 (a) of Title VII of the Civil Rights Act of 1964 as amended.

Entry 57, Ex. P. Plaintiff also states in his EEOC filing that he thinks the actions taken by his employer were discriminatory because "the perpetrator of the sexual harassment charge is the Assistant Sheriff's husband." Plaintiff states: "[m]y support of Deputy Midgett's sexual harassment claim has subjected me to systematic and pervasive stress and harassment over a four month period resulting in a letter of suspension for manufactured charges." Entry 57, Ex. P.

On, November 6, 2007, Plaintiff's grievance was denied by Honan. Honan indicated that while the anonymous calls to Plaintiff were alarming, they had no bearing on the discipline Plaintiff had received for his improper actions. On November 7, 2007, Plaintiff requested that Sowers review his grievance. On November 13, 2007, Plaintiff withdrew his grievance.

On November 26, 2007, Stanley issued Plaintiff a Letter of Reprimand regarding the improper reporting of an issue through the chain of command, and having an improper attitude towards his superior (Stanley). On November 30, 2007, Stanley issued Plaintiff an LOI stating that Plaintiff's response to radio calls on a specific date was inadequate.

On December 4, 2007, Plaintiff submitted an application for a police officer position with the Town of Summerville. On December 12, 2007, Plaintiff submitted an application for a police

officer position with the City of North Charleston. On December 13, 2007, Plaintiff filed a discrimination claim with the South Carolina Human Affairs Commission. On December 17, 2007, Plaintiff submitted an application for a police officer position with the City of Goose Creek. On December 18, 2007, Plaintiff submitted application for a deputy sheriff position with the Berkeley County Sheriff's Department. On January, 8, 2008, Plaintiff accepted a police officer position with the City of Goose Creek.

On February 11, 2008, Stanley issued Plaintiff a Letter of Suspension based upon a violation of the Rumors and Classified Information policy. Plaintiff was suspended from duty without pay for one day. On February 13, 2008, Plaintiff submitted a "Compensation Study Grievance" to Sheriff Cannon. This grievance indicates that Plaintiff sought a pay increase because of his longevity with the Sheriff's Department; and his low base salary as compared to individuals of the same rank, who unlike Plaintiff, did not have a college education. On February 15, 2008, Plaintiff submitted a Letter of Retirement to Sheriff Cannon. The letter indicated that Plaintiff felt that he had been retaliated against, subjected to a hostile work environment, and that his complaints about these issues had been ignored. On February 20, 2008, Sheriff Cannon responded to Plaintiff's letter. On March 7, 2008, Plaintiff retired after taking advantage of some accrued paid leave. On March 15, 2008, Plaintiff received a Notice of Right to Sue letter from the EEOC. On March 24, 2008, Plaintiff began working for the City of Goose Creek Police Department.

## II. DISCUSSION

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Community College of Baltimore*, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

A. <u>Charleston Count Sheriff's Office as *Sui Juris*</u>

The Magistrate Judge found that the Charleston County Sheriff's Office is not *sui juris* and recommended that this party be dismissed as a named Defendant. Plaintiff did not object to this recommendation. Nevertheless, the court has carefully reviewed the record and concurs in the Magistrate Judge's conclusion. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this

'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency.").

B.    Retaliation Claim

Plaintiff objects to the Magistrate Judge's grant of summary judgment on his retaliation claim. The Magistrate Judge concluded that Plaintiff failed to establish a prima facie case of retaliation because none of the actions Plaintiff complained of were materially adverse. Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). A plaintiff may demonstrate retaliation through direct or circumstantial evidence. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). When there is insufficient direct evidence to prove a claim, a plaintiff may proceed under the *McDonnell Douglas* framework. *Id.* Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of demonstrating a *prima facie* case of retaliation by a preponderance of the evidence. *See Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). If the plaintiff satisfies the initial burden of demonstrating a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its adverse employment action. *See Beall v. Abbott Lab.*, 130 F.3d 614, 619 (4th Cir. 1997). If the employer satisfies its burden of production, then the burden of proof shifts back to the plaintiff to show that the employer acted with a retaliatory intent and that its proffered explanation was a pretext for retaliation. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). The court notes that:

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated. . . . [J]udgment as a matter of law may be appropriate if a plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* at 215 (internal citations and quotation marks omitted).

To establish a *prima facie* case of retaliation, Plaintiff must prove that: 1) he engaged in a protected act, 2) an adverse employment action was taken against him, and 3) there is a causal connection between the act and the adverse action. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Protected activity includes "opposing an unlawful employment practice or participating in any manner in a Title VII investigation, proceeding, or hearing." *Reed v. Airtran Airways, Inc.*, No. 09-1062, 2009 WL 3792429, at *1 (4th Cir. Nov. 13, 2009). For the purposes of summary judgment, the parties agree that Plaintiff engaged in protected conduct when he reported Midgett's sexual harassment allegations and when Plaintiff filed his charge with the EEOC.

As to the second factor, adverse employment actions need not be so severe as to "affect the terms and conditions of employment." *Burlington N. & Santa Fe Rwy. v. White*, 548 U.S. 53, 64 (2006). Adverse employment actions, however, must be "materially adverse," meaning adverse actions must be such that they could dissuade "a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.

The court concludes that Plaintiff was subjected to an adverse employment action. First, Plaintiff's three day suspension and six months of probation from off-duty employment resulted in a reduction in Plaintiff's pay. Second, Plaintiff's removal from his special assignments with the Vehicle Collision Review Board and as Promotional Process Chair were materially adverse because they constituted a loss of status. Third, Sheriff Cannon's threat to terminate Plaintiff could dissuade

12

a reasonable worker from making or supporting a charge of discrimination or retaliation.

With regard to whether there is a causal connection between the above adverse employment action and Plaintiff's protected activity, the court finds that Plaintiff has established such a connection. Plaintiff contends that the discipline he received and his removal from special assignments was connected to his reporting of Midgett's sexual harassment claims. Plaintiff has provided the court with sufficient circumstantial evidence of a causal connection because: 1) Plaintiff had never received formal discipline prior to his reporting of Midgett's sexual harassment; 2) Plaintiff's report of Midgett's harassment claims and the discipline received by Plaintiff had a temporal proximity; 3) Assistant Sheriff Coury-Smith oversees Internal Affairs investigations, controls special assignments, and is at the top of Plaintiff's chain of command; 4) Assistant Sheriff Coury-Smith had a potential conflict of interest in these matters as Smith's wife. Plaintiff also contends that Sheriff Cannon's threat of termination was related to the reporting of Midgett's allegations. The fact that Sheriff Cannon threatened to fire Plaintiff during the same meeting that Plaintiff reported Midgett's sexual harassment claims directly to him indicates Plaintiff has shown a causal connection by the required preponderance standard. Therefore, Plaintiff has established the final element of his *prima facie* case for retaliation.

The burden thus shifts to Defendants to produce a legitimate nondiscriminatory reason for the above adverse employment actions. Defendants allege that Plaintiff's discipline was not retaliation for protected activity but was related to misconduct engaged in by Plaintiff. Defendants contend that Plaintiff's removal from special assignments were routine organizational changes. With regard to Sheriff Cannon's threat, Sheriff Cannon contends that he threatened to fire Plaintiff because of his perception that Plaintiff was attempting to subvert the Internal Affairs investigation

13

into Midgett's complaint and accusing several members of the Sheriff's Department of improper bias without evidence.

Plaintiff now must establish that these legitimate non-discriminatory reasons for the adverse employment actions are mere pretext for retaliation. The court finds that Plaintiff has provided the court with sufficient evidence of pretext. With regard to Plaintiff's six month probation from off-duty assignments, Plaintiff argues that the punishment for his "nodding off" while on duty is unreasonable. Plaintiff contends that he was not supposed to be scheduled at Force Protection the day he nodded off and that he only worked the shift in question because he was ordered to report to duty. Because of this mistake in the schedule, Plaintiff was put in the position of reporting for an off-duty assignment at Force Protection despite the fact that it violated Defendant's policy forbidding employees to work over sixteen hours during a twenty-four hour period, or risking damage to the Department's reputation by not reporting for duty when no one else was available. These mitigating circumstances provide the court with sufficient evidence of pretext to prevent summary judgment on this issue.

With regard to Plaintiff's removal from special assignments, Plaintiff offers evidence that he may have been removed from his special assignments in retaliation for reporting allegations against the Assistant Sheriff's husband. Plaintiff has presented the court with evidence that Assistant-Sheriff Coury-Smith had a vindictive attitude towards those she did not like. Lieutenant Brown, a former employee of Defendants, deposed that the command staff at the Sheriff's Department, including the Assistant Sheriff, is "very vindictive" towards those "on their bad list." Brown Dep. at 25:9-25. In addition, the timing of these assignment changes, soon after Plaintiff reported Midgett's allegations of sexual harassment, provides additional evidence of pretext.

Finally, with regard to Sheriff Cannon's threat to fire Plaintiff, the court finds that there is sufficient evidence of pretext. Sheriff Cannon's anger at Plaintiff for reporting Midgett's claims directly to him despite Sheriff Cannon's admission that employees could go to him as a sort of safety valve provides sufficient evidence that Sheriff Cannon's proffered reason for the threat is pretext. Based on the foregoing, the court denies summary judgment on Plaintiff's retaliation claim.

C.  Constructive Discharge

Plaintiff objects to the Magistrate Judge's grant of summary judgment on his constructive discharge claim. The Magistrate Judge found that Plaintiff could not establish a claim for constructive discharge because he cannot show that his working conditions were intolerable. In addition, the Magistrate Judge found that Plaintiff had not exhausted his administrative remedies. The court will address each of these issues.

1.  *Whether Plaintiff Can Establish a Claim for Constructive Discharge*

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Management of North America, Inc.*, 126 F.3d 239, 244 (4th Cir. 1997). To establish a claim for constructive discharge, a plaintiff must show: 1) deliberateness of an employer's action, and 2) intolerability of the working conditions." *Id.* "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). A plaintiff must provide "proof of the employer's specific intent to force an employee to leave." *Id.* A court may infer intent from circumstantial evidence, including a failure to act in the face of known intolerable conditions. *Id.* Intolerability of working conditions is assessed by the objective standard of whether a 'reasonable person' in the employee's position

would have felt compelled to resign." *Id.* "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Id.* However, an employee is not "guaranteed a working environment free of stress." *Id.* This is to avoid transforming the employment discrimination laws into "a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." *Id.*

With regard to a deliberate intent to force Plaintiff to retire, the court finds that Plaintiff's evidence is sufficient to survive summary judgment. Stanley admitted to telling Plaintiff that he did not want Plaintiff in his division and that "[i]f [he] could get rid of [Plaintiff], [he] would." These statements, in conjunction with the LOIs and discipline issued to Plaintiff, provide sufficient circumstantial evidence that Stanley may have intended to force Plaintiff to retire.

The court agrees with the Magistrate Judge, however, that Plaintiff has not established intolerability of conditions. In the court's view, the discipline received by Plaintiff, a total of four days of suspension from duty and six months probation from working off-duty assignments, would not have compelled a reasonable person to retire. In fact, Plaintiff remained in his position for several months while applying for jobs with other police departments indicating that the conditions were not truly intolerable. There is no evidence that Plaintiff was forced to resign because his employer imposed unreasonably harsh working conditions in excess of those faced by his co-workers.

    2.    *Whether Plaintiff has Exhausted His Administrative Remedies*

The Magistrate Judge found that Plaintiff's constructive discharge claim was barred because Plaintiff never presented it in a complaint for administrative review. Plaintiff contends that his

16

constructive discharge claim is reasonably related to his original charge of discrimination based on retaliation such that he need not separately exhaust his administrative remedies for his constructive discharge claim. The court disagrees.

Before bringing suit for constructive discharge under Title VII, a plaintiff must exhaust his administrative remedies. *See Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005). The allegations included in an administrative charge of discrimination typically operate to limit the scope of any subsequent lawsuit. *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976). However, discrimination claims "reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may [also] be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (citing *King*, 538 F.2d at 583). The Supreme Court has indicated, however, that a claim for constructive discharge is not necessarily saved by this "continuing violations" doctrine. *Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (indicating that discrete acts such as termination and failure to promote require exhaustion)). The Fourth Circuit has found constructive discharge is a discrete discriminatory act requiring administrative exhaustion. *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237-38 (4th Cir. 1987). Because constructive discharge is a discrete discriminatory act subject to administrative exhaustion and this claim was not included on Plaintiff's charge of discrimination, this claim must be dismissed for failure to exhaust administrative remedies.

D. <u>Wrongful Discharge Against Public Policy</u>

The Magistrate Judge indicated that Plaintiff's claim for wrongful discharge against public policy fails for the same reasons as Plaintiff's constructive discharge claims. Plaintiff did not object

to this recommendation. Thus, the court reviews this ruling to satisfy itself that there is no clear error on the face of the record.

In *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law." *Id.* at 216; *see also Culler v. Blue Ridge Elec. Coop.*, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law." *Barron v. Labor Finders of South Carolina*, 682 S.E.2d 271, 273 (S.C. Ct. App. 2009). However, the South Carolina Supreme Court has explicitly held that "[w]hen a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." *Palmer v. House of Blues Myrtle Beach Rest. Corp.*, No. 05-3301, 2006 WL 2708278, at *3 (D.S.C. Sept. 20, 2006) (citing *Lawson v. South Carolina Dep't of Corr.*, 532 S.E.2d 259 (2000); *Dockins v. Ingles Mkts., Inc.*, 413 S.E.2d 18, 19 (1992)).

The court finds that Plaintiff's cause of action fails for two reasons. First, Plaintiff has failed to identify a public policy violation with respect to this claim. Second, as evidenced by Plaintiff's claim for constructive discharge in violation of Title VII, Plaintiff has a statutory remedy for his termination claim. Under *Palmer*, Plaintiff is limited to that remedy. *See also Heyward v. Monroe*, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998) (finding that Plaintiff's public policy termination claim was appropriately dismissed because "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It

has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case.").

E.     Hostile Work Environment

The Magistrate Judge found that Plaintiff could not establish a hostile work environment claim because Plaintiff did not allege that the hostile work environment was based upon race or gender. Because Plaintiff did not object to this recommendation, the court reviews this ruling to satisfy itself that there is no clear error on the face of the record.

The court has carefully reviewed the record and concurs in the Magistrate Judge's conclusion. To state a hostile work environment claim under Title VII, Plaintiff must allege that: (1) he experienced unwelcome harassment; (2) the harassment was based on his gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Plaintiff does not allege in his complaint that his hostile working environment was based upon gender, race, or age. Therefore, this claim fails as a matter of law.

F.     Breach of Contract

The Magistrate Judge found that Plaintiff's breach of contract claim must fail because Plaintiff has not offered proof of an employment contract or handbook, nor has he pleaded a handbook claim. Plaintiff did not object to this recommendation and the court reviews this ruling to satisfy itself that there is no clear error on the face of the record. The court has carefully reviewed the record and concurs in the Magistrate Judge's assessment.

G.   Claims Under § 1981

In the complaint, Plaintiff makes several claims pursuant to 42 U.S.C. § 1981. While the Report and Recommendation did not specifically address claims under § 1981, the court finds it prudent to do so. In *Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989) the Supreme Court held, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units. . . ." *Jett,* 491 U.S. at 771. Although other holdings from *Jett* were abrogated by the Civil Rights Act of 1991, this aspect of the Court's ruling in *Jett* remains in effect. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156, n.1 (4th Cir. 1995) (As to the ruling that §1983 is the exclusive remedy against a governmental actor for violations of § 1981, "we do not believe this aspect of *Jett* was affected by the Civil Rights Act. of 1991."). As a result, any claim pursuant to § 1981 fails.

### III.  CONCLUSION

The Charleston County Sheriff's office is dismissed as a Defendant in this case because it is not *sui juris*. Defendants' motion for summary judgment (Entry 57) is **granted** as to all causes of action except Plaintiff's claim for retaliation under Title VII.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

March 31, 2010
Columbia, South Carolina