IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| George Karges, | ) | |
| | ) | C.A. No. 2:08-cv-2163-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Charleston County Sheriff's Office and J. | ) | |
| Al Cannon, Jr., as Sheriff of Charleston | ) | |
| County, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff George Karges filed the within action on June 10, 2008 against the Charleston

County Sheriff's Office and J. Al Cannon, Jr. ("Sheriff Cannon"), as Sheriff of Charleston County,

alleging: 1) retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1991,

42 U.S.C. §§ 2000e *et seq.*; 2) hostile work environment in violation of Title VII and 42 U.S.C. §

1981; 3) constructive discharge in violation of Title VII and § 1981;  4) wrongful discharge in

violation of South Carolina public policy; and 5) breach of contract.  On July 10, 2009, Defendants

filed a motion for summary judgment.  On August 10, 2009, Plaintiff responded.  On September 3,

2009, Defendants replied.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, this matter was referred to

United States Magistrate Judge Robert S. Carr for pretrial handling.  On March 5, 2010, the

Magistrate Judge issued a Report and Recommendation in which he recommended that Defendants'

motion for summary judgment be granted.  The Magistrate Judge further recommended that the

Charleston County Sheriff's Office be stricken from the caption of the case as not *sui juris*, not

capable of suing or being sued in its own right.  On March 25, 2010, Plaintiff filed objections to the

Magistrate Judge's Report and Recommendation.

On March 31, 2010, the court entered an order dismissing the Charleston County Sheriff's Office from the case as *sui juris* and granting Defendant summary judgment on all causes of action except Plaintiff's claim for retaliation under Title VII. The court's order was entered prior to Defendants having an opportunity to respond to Plaintiff's objections to the Report and Recommendation in accordance with changes to Federal Rule of Civil Procedure 72(b)(2). *See* Fed. R. Civ. P. 72(b)(2) (permitting a party to respond to another party's objections within 14 days). On April 21, 2010, Sheriff Cannon filed a motion for reconsideration based upon the changes to Rule 72(b)(2). On May 11, 2010, Plaintiff responded. On May 20, 2010, Sheriff Cannon replied. The court has determined that to make a clear record, the court's prior order shall be vacated and the court will consider the Report and Recommendation, objections, and responses to the objections *de novo*.[1]

## I. <u>FACTS</u>

The facts as viewed in the light most favorable to Plaintiff are as follows. On December 30, 1985, Sheriff Cannon hired Plaintiff as a police officer. On May 28, 2004, Plaintiff was promoted to the rank of Lieutenant. In late 2006, Plaintiff requested and received a transfer from the Counterterrorism Division to the Patrol Division. Plaintiff's new supervisor in Patrol was Captain Michael Stanley ("Stanley").

Between October 2006 and March 2007 Stanley allegedly observed various problems with

---

[1] District courts retain the power to reconsider and modify interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such reconsideration is warranted. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); Fed. R. Civ. P. 54(b)).

Plaintiff's work performance, at least some of which were discussed between Plaintiff and Stanley as they arose. On March 11, 2007, Stanley requested assistance from Internal Affairs in evaluating Plaintiff's conduct with regard to Plaintiff's scheduling of leave time in February and March of 2007. The investigation of Plaintiff's conduct later revealed that Stanley's concerns were unfounded. On March 23, 2007, Plaintiff submitted a written request to transfer out of Stanley's unit "due to personal and professional conflicts. . . ." Entry 57, Ex. D. On the same day, Plaintiff also submitted written resignations from his special assignments as Promotional Process Coordinator and Exposure Control Officer and Trainer. Plaintiff subsequently withdrew the request to transfer and both resignations, and Stanley indicated that the resignations would go no further up the chain of command. On March 25, 2007, Stanley and Plaintiff discussed Plaintiff's work performance and Stanley stated: "I did not want you here in the first place and I told the staff that." Entry 57, Ex. F at 73:9-19. Stanley also told Plaintiff "[y]ou are my weakest Lieutenant and if I could get rid of you I would." *Id.*

On April 3, 2007, Stanley issued Plaintiff a non-disciplinary Letter of Instruction ("LOI") outlining various issues with Plaintiff's job performance, including some of the issues that Stanley discussed with Plaintiff in March. On April 6, 2007, Plaintiff submitted a written complaint to Internal Affairs relating to the LOI. Plaintiff alleged that he was being subjected to a "hostile and unfair working relationship and environment." He requested that the LOI be withdrawn. On April 12, 2007, Plaintiff filed a formal grievance with Stanley in response to the LOI, asking to have it removed from his file, and asking that Major Thomas Honan ("Honan") mediate the conflict. On April 18, 2007, Internal Affairs issued a response in which it concluded that Stanley was performing his duty as Plaintiff's supervisor and that Stanley's comments did not rise to the level of unlawful

harassment.  On April 20, 2007, Stanley responded to Plaintiff's grievance, and denied the request that Stanley rescind the LOI.  On April 22, 2007, Plaintiff submitted a grievance about the LOI to Honan.

On June 27, 2007, Deputy Sarah Midgett ("Midgett"), a former subordinate of Plaintiff, reported to Plaintiff that she felt harassed by Deputy Robert Smith ("Smith").  That day, Plaintiff reported Midgett's allegations to his acting supervisor Lieutenant Brock ("Brock").  When Plaintiff indicated who was involved in the sexual harassment, Brock stated that he did not need to hear any more and instructed Plaintiff to report the harassment to Internal Affairs.

On June 28, 2007, Plaintiff reported Midgett's sexual harassment complaint to Inspector Kevin Whited ("Whited") in Internal Affairs.  Internal Affairs opened an investigation into Midgett's complaint that same day.  All Internal Affairs investigations are reviewed by the Assistant Sheriff's office.  The Assistant Sheriff is Andrene Coury-Smith ("Assistant Sheriff Coury-Smith"), who is Smith's wife.  Upon learning of Midgett's complaint, Lieutenant Conkey, Midgett's supervisor, was upset that Plaintiff did not refer Midgett back to her chain of command.

Between June 28, 2007 and July 2, 2007 Plaintiff received several anonymous threatening telephone calls telling him that he was "in trouble" and that he should "watch his six." Pl. Dep at 65:19-68:6.  Plaintiff reported the initial telephone calls to Whited, but after receiving more telephone calls, decided to speak to Sheriff Cannon about the issue.  On July 1, 2007, Plaintiff called Sheriff Cannon at home to ask for a meeting to discuss: 1) the harassing telephone calls; 2) Smith's conduct toward Midgett; and 3) Plaintiff's concern that because Internal Affairs investigations are reviewed by Assistant Sheriff Coury-Smith's office, the investigation was not being properly handled.  On July 2, 2007, Plaintiff, along with Whited and Inspector Mark Fields ("Fields"), met

4

with Sheriff Cannon. Fields briefed Sheriff Cannon on the investigation of Midgett's allegations and the phone calls to Plaintiff. Subsequently, Sheriff Cannon asked to meet privately with Plaintiff. During the meeting Sheriff Cannon told Plaintiff: "[B]efore the day is over, I may fire you . . . You're getting to where you're more trouble than you're worth." Cannon Dep. 57:15-21. Sheriff Cannon stated that he was upset with Plaintiff and that he made this statement because he believed Plaintiff was trying to subvert the Internal Affairs investigation regarding Midgett's complaints and accuse several members of the Sheriff's Department of bias without evidence. Sheriff Cannon later stated that he is one of the escape valves that employees can access if the Sheriff's Department is not running properly. Cannon Dep. at 49:3-10; 53:13-16.

On July 30, 2007, the Internal Affairs investigation into Midgett's sexual harassment allegations concluded with a determination that Smith's conduct did not constitute sexual harassment, but that Smith's conduct was, nevertheless, inappropriate conduct for an officer. Smith was suspended from his duties as a Field Training Instructor for six months, and received a letter of reprimand from Honan, which was placed in Smith's personnel file for one year.

On July 20, 2007, Chief Deputy Sowers ("Sowers") received information that Plaintiff made improper disclosures to potential promotion candidates relating to Plaintiff's duties as Promotional Process Coordinator. On July 26, 2007, an Internal Affairs investigation was opened to investigate Plaintiff's alleged disclosures relating to the promotional process and Plaintiff's allegedly sleeping while on duty at Force Protection Industries, Inc. ("Force Protection").

On July 31, 2007, Plaintiff's performance review was due, but was held in abeyance until the Internal Affairs investigation into Plaintiff's conduct concluded. On August 6, 2007, Plaintiff was interviewed by Internal Affairs regarding the allegations of improper promotional process disclosures

and sleeping on duty.[2]  During this interview, Plaintiff admitted to contacting Lieutenant Martin, a former Promotional Process Chair, to get his opinion about how miscalculations in promotional scores should be handled.  Plaintiff also admitted to using the term "Metro Mafia" in discussing Assistant Sheriff Coury-Smith's decision on the promotion issue, but stated that it was an attempt at dry humor.  Plaintiff admitted that he was "fatigued and nodded off and was inattentive to his post" at Force Protection at the time in question, but indicated that he was working at Force Protection after completing a twelve hour shift.  (Entry 57, Ex. A 166:9-167:16; 174:20-177:17; Ex. K).  On August 28, 2007, the Internal Affairs investigation into Plaintiff's behavior concluded with a determination that Plaintiff violated numerous rules and directives relating to inappropriate promotional process disclosures and sleeping during a security assignment at Force Protection. The conclusion was forwarded to Sowers for action.

On October 24, 2007, Plaintiff was disciplined by Honan for his actions related to his disclosures to candidates about the promotional process and sleeping on duty.  Plaintiff received a three-day suspension from duty and a six-month prohibition from working off-duty assignments. That same day, Plaintiff filed a written grievance with Honan relating to this discipline, and his removal from the Vehicle Collision Review Board and Promotional Process Chair assignments.[3] Plaintiff sought re-examination of the facts surrounding his case and rescission of the discipline. Plaintiff's grievance states that Plaintiff believed that these actions were retaliatory and related to

---

[2]     On June 27, 2007, one of Plaintiff's co-workers received a complaint that Plaintiff was allegedly sleeping while on an off-duty assignment as a security guard for Force Protection.

[3]     On September 19, 2007, Plaintiff was replaced on the Vehicle Collision Review Board by a Traffic Division Lieutenant.  On October 16, 2007, Assistant Sheriff Coury-Smith removed Plaintiff from his position as the Promotional Process Chair after a two-year extension of Plaintiff's original two-year term during which Plaintiff enacted changes to the system.

his report of Midgett's sexual harassment complaints. Plaintiff admitted to making disclosures regarding the promotional process, but disputed that he violated any orders in making such disclosures. Plaintiff also admitted to using the term "Metro Mafia" to diffuse a Sergeant's concerns about the hiring process by stating that the "Metro Mafia" decided the issue and nothing could be done about it. In addition, Plaintiff claimed that he was not sleeping on duty, but was fatigued and talking on his cell phone. Plaintiff argues that he was not supposed to be working that day at all, and that he was only working as a favor to the agency because there was a mistake in the schedule. Plaintiff's grievance also states that Midgett told Plaintiff she overheard a conversation between Smith and Sergeant Anderson that Plaintiff was "going to pay for interfering with Metro's business" regarding Plaintiff's reporting Midgett's sexual harassment claims.

On October 26, 2007, Plaintiff filed a Charge of Discrimination with the EEOC alleging that he was subjected to retaliation beginning in June 27, 2007. The Charge states:

I.    I was hired by the above named employer on December 30, 1985, as a Charleston County Police Officer. On May 28, 2004, I was promoted to the position of Deputy Sheriff Lieutenant, the position I currently hold. From approximately June 27, 2007 through the present, I have been subjected to the following adverse employment actions in retaliation for opposing employment discrimination against a former female subordinate and for my participation in the investigation of internal and external EEO complaints she filed: 1) from August to the present and at least on three occasions, I have requested and been denied a performance appraisal which was due on July 31, 2007; 2) I was removed from specialized duties; 3) I was informed that I would be suspended for three days without pay at the convenience of the Patrol Division Commander; 4) I was told I could no longer work off-duty employment; and 5) I was threatened with termination by Sheriff Al Cannon.

II.    On or about July 2, 2007, Sheriff Al Cannon's verbal response to my concerns regarding my opposition to employment discrimination of a formal female employee was to threaten me with termination of my employment. Captain Michael Stanley, my immediate supervisor, told me that he didn't

have the time to complete my performance appraisal. On or about September 19, 2007, Captain Oliver Puckett told me that my Vehicle Collision Review Board position was a Lieutenant's position assigned to the Traffic Division. On October 16, 2007, Assistant Sheriff, Corey Smith [sic], informed me, via memorandum, that I was being replaced from the Promotional Process Coordinator position because the policy states that it is a two year appointment.

III.  I believe I have been discriminated against in retaliation for opposing unlawful employment practices, and for being part of internal and external EEO investigations, in violation of Section 704 (a) of Title VII of the Civil Rights Act of 1964 as amended.

Entry 57, Ex. P.  Plaintiff also states in his EEOC filing that he thinks the actions taken by his employer were discriminatory because "the perpetrator of the sexual harassment charge is the Assistant Sheriff's husband." Plaintiff states: "[m]y support of Deputy Midgett's sexual harassment claim has subjected me to systematic and pervasive stress and harassment over a four month period resulting in a letter of suspension for manufactured charges." Entry 57, Ex. P.

On November 6, 2007, Plaintiff's grievance was denied by Honan. Honan indicated that while the anonymous calls to Plaintiff were alarming, they had no bearing on the discipline Plaintiff had received for his improper actions. On November 7, 2007, Plaintiff requested that Sowers review his grievance. On November 13, 2007, Plaintiff withdrew his grievance.

On November 26, 2007, Stanley issued Plaintiff a Letter of Reprimand regarding the improper reporting of an issue through the chain of command, and having an improper attitude towards his superior (Stanley). On November 30, 2007, Stanley issued Plaintiff an LOI because Plaintiff's responses to radio calls on a specific date were inadequate. By December 2007, Plaintiff began seeking new employment. On January 8, 2008, Plaintiff accepted a police officer position with the City of Goose Creek, which he would begin at a later time.

On February 11, 2008, Stanley issued Plaintiff a Letter of Suspension for a violation of the Rumors and Classified Information policy based upon Plaintiff telling Sergeant Morris about negative comments made about her by another supervisor. Plaintiff was suspended from duty without pay for one day. On February 13, 2008, Plaintiff submitted a "Compensation Study Grievance" to Sheriff Cannon. This grievance indicates that Plaintiff sought a pay increase because of his longevity with the Sheriff's Department; and his low base salary as compared to individuals of the same rank, who unlike Plaintiff, did not have a college education. On February 15, 2008, Plaintiff submitted a Letter of Retirement to Sheriff Cannon. The letter indicated that Plaintiff felt that he had been retaliated against, subjected to a hostile work environment, and that his complaints about these issues had been ignored. On February 20, 2008, Sheriff Cannon responded to Plaintiff's letter. On March 7, 2008, Plaintiff retired after taking advantage of some accrued paid leave. On March 15, 2008, Plaintiff received a Notice of Right to Sue letter from the EEOC. On March 24, 2008, Plaintiff began working for the City of Goose Creek Police Department.

## II.  DISCUSSION

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. *Id.* In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Community College of Baltimore*, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

A.    Charleston County Sheriff's Office as *Sui Juris*

The Magistrate Judge found that the Charleston County Sheriff's Office is not *sui juris* and recommended that this party be dismissed as a named Defendant. Plaintiff did not object to this recommendation. Nevertheless, the court has carefully reviewed the record and concurs in the Magistrate Judge's conclusion. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency.").

B.    Retaliation Claim

Plaintiff objects to the Magistrate Judge's grant of summary judgment on his retaliation claim. The Magistrate Judge concluded that Plaintiff failed to establish a *prima facie* case of retaliation because none of the actions Plaintiff complained of were materially adverse. Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). A plaintiff may demonstrate retaliation through direct or circumstantial evidence. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). When there is insufficient direct evidence to prove a claim, a plaintiff may proceed under the *McDonnell Douglas* framework. *Id.* Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of demonstrating a *prima facie* case of retaliation by a preponderance of the evidence. *See Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). If the plaintiff satisfies the initial burden of demonstrating

a *prima facie* case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its adverse employment action. *See Beall v. Abbott Lab.*, 130 F.3d 614, 619 (4th Cir. 1997). If the employer satisfies its burden of production, then the burden of proof shifts back to the plaintiff to show that the employer acted with a retaliatory intent and that its proffered explanation was a pretext for retaliation. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

1.    *Prima Facie Case of Retaliation*

To establish a *prima facie* case of retaliation, Plaintiff must prove that: 1) he engaged in a protected act, 2) an adverse employment action was taken against him, and 3) there is a causal connection between the act and the adverse action. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Protected activity includes "opposing an unlawful employment practice or participating in any manner in a Title VII investigation, proceeding, or hearing." *Reed v. Airtran Airways, Inc.*, No. 09-1062, 2009 WL 3792429, at *1 (4th Cir. Nov. 13, 2009). For the purposes of summary judgment, the parties agree that Plaintiff engaged in protected conduct when he reported Midgett's sexual harassment allegations and when Plaintiff filed his charge with the EEOC.

I.    Adverse Employment Action

As to the second factor, adverse employment actions need not be so severe as to "affect the terms and conditions of employment." *Burlington N. & Santa Fe Rwy. v. White*, 548 U.S. 53, 64 (2006). While the Supreme Court has indicated that the anti-retaliation provision protects individuals only from retaliation that produces an injury or harm, the Court has stated that the showing a plaintiff must make is that a reasonable employee would have found the action materially adverse, meaning that it could dissuade "a reasonable worker from making or supporting a charge

of discrimination." *Id.* at 67-68.

The court concludes that Plaintiff has made a prima facie showing that he was subjected to three adverse employment actions. First, Plaintiff's three-day suspension and six-month prohibition from off-duty employment resulted in a reduction in Plaintiff's pay. Second, Plaintiff's removal from his special assignments with the Vehicle Collision Review Board and as Promotional Process Chair were materially adverse because they constituted a loss of status. Third, Plaintiff's one-day suspension without pay was also materially adverse because it resulted in a reduction in Plaintiff's pay.[4]

    ii.    Causal Connection

With regard to whether there is a causal connection between the above adverse employment actions and Plaintiff's protected activity, the court finds that Plaintiff has established such a connection. Plaintiff contends that his three-day suspension, prohibition from working off-duty assignments, removal from special assignments, and one day suspension without pay were related

---

[4] Plaintiff contends that Sheriff Cannon's threat to terminate Plaintiff was also materially adverse. Defendant argues, citing several out-of-circuit cases, that Plaintiff was not harmed by Sheriff Cannon's threat because the threat was not carried out. *See Smith v. Harvey*, 265 F. App'x 197, 201 (5th Cir. 2008) (holding that a statement by a person other than the plaintiff's supervisor that "something bad" was going to happen to the plaintiff was not adverse when the comment was made only once and nothing bad ever happened to the plaintiff); *Pugni v. Reader's Digest Ass'n, Inc.*, No. 05 Civ. 8026(CM), 2007 WL1087183, at *23 (S.D.N.Y. Apr. 9, 2003) (holding that a threat by the plaintiff's supervisor that the plaintiff's days at Reader's Digest were numbered was not materially adverse because the threat was never carried out); *Walles-Hall v. Center for Nonprofit Advancement*, 481 F. Supp. 2d 118, 155 (D.D.C. 2007) (finding that a threat to terminate the plaintiff for the use of sick leave was not materially adverse because the threat was not carried out and did not produce an injury or harm). These cases are not binding upon this court. Case law within this circuit is not uniform with regard to whether threats to terminate an individual's employment are materially adverse for the purposes of establishing a prima facie case of retaliation. *See Newby v. Whitman*, 340 F. Supp. 2d 637, 663 (M.D.N.C. 2004) (finding a verbal threat to fire an employee is not adverse when it is not carried out); *cf. Caldwell v. Jackson*, 2009 WL 2487850, at *16 (M.D.N.C. Aug. 11, 2009)(finding that a verbal threat to fire an employee if she filed an EEOC complaint was adverse). The court concludes that Sheriff Cannon's threat to terminate Plaintiff, which was never carried out was not materially adverse.

to the reporting of Midgett's allegations. A reasonable jury could find such a relationship. First, viewed in the light most favorable to Plaintiff, Assistant Sheriff Coury-Smith, who was at the top of Plaintiff's chain of command, oversaw Internal Affairs investigations, and removed Plaintiff from his special assignment as Promotional Process Chair, had a potential conflict of interest as Smith's wife. Second, Plaintiff's lack of a formal disciplinary record[5] prior to his reporting Midgett's sexual harassment is circumstantial evidence of a causal connection between Plaintiff's protected activity and the adverse employment actions.[6] Therefore, for the purposes of summary judgment, Plaintiff has established the final element of his *prima facie* case for retaliation for each of the above-noted adverse employment actions.

### 2. *Legitimate Nondiscriminatory Reason*

Because the court found for purposes of summary judgment that Plaintiff has made out a prima facie case of retaliation, the burden shifts to Sheriff Cannon to produce a legitimate nondiscriminatory reason for the above adverse employment actions. Sheriff Cannon alleges that the discipline Plaintiff received was not retaliation for protected activity but was all related to misconduct engaged in by Plaintiff. Sheriff Cannon contends that the removal of Plaintiff from two

---

[5] Although Plaintiff received an LOI, the record indicates that LOIs are nondisciplinary, and are merely instructional. Such an instructional tool does not affect Plaintiff's formal disciplinary record.

[6] Plaintiff's report of Midgett's harassment claims and the discipline received by Plaintiff, including his six-month prohibition and removal from special assignments, had a temporal proximity of three to four months. This moderate temporal proximity also provides some support for a causal connection. While a temporal proximity of three to four months is insufficient on its own to establish the requisite causal connection, *Lawrence v. Veolia Transp. Servs., Inc.*, C/A No. 2:07-2722, 2009 WL 857394, at *3 (D.S.C. March 30, 2009); a temporal proximity of this length can support a finding of a causal connection when combined with other evidence of a causal connection. *See Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (unpublished) (stating that "the passage of time *alone* cannot provide proof of causation unless the temporal proximity between an employer's knowledge of protected activity and an adverse employment action was very close" and finding that a three to four month temporal proximity was "too long to establish a causal connection by temporal proximity alone.").

special assignments was a routine organizational change.

    3.    *Pretext*

To survive summary judgment, Plaintiff must "prove by a preponderance of the evidence that [Defendant's] stated reasons [for the adverse employment actions] were not [the] true reasons, but were a pretext for discrimination." *Holland*, 487 F.3d at 214. A plaintiff may accomplish this "by showing that the employer's proffered explanation is unworthy of credence." *Id.* The Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). However, the Court has also warned that summary judgment may still be appropriate if a "plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred." *Id.* The key inquiry is what the relevant decision maker believed when he or she took an adverse employment action. *See Holland*, 487 F.3d at 215. The court need not decide "whether the [proffered] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [adverse employment action against the] plaintiff." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000).

With regard to Plaintiff's three-day suspension, Plaintiff argues that the punishment was inappropriate because he did not violate any orders when he shared promotional process information. However, even viewing the facts in the light most favorable to Plaintiff, Plaintiff admits to having shared promotional process information with subordinates and to using the term "Metro Mafia." Plaintiff has not shown by a preponderance of the evidence that Honan's reason for suspending him for three days was to retaliate against Plaintiff for reporting Midgett's sexual harassment allegations.

Thus, Plaintiff's retaliation claim based upon his three-day suspension fails.

With regard to Plaintiff's six-month prohibition from off-duty assignments, Plaintiff argues that the punishment for his "nodding off" while on duty is unreasonable. Plaintiff's version of the facts indicates that he was talking on his cell phone and inattentive to his post at Force Protection due to a scheduling error outside of his control. However, Plaintiff admitted to nodding off at Force Protection and later back-tracked claiming that he was merely inattentive to his post. It is reasonable that Plaintiff's admissions would warrant some type of punishment. Plaintiff has not shown by a preponderance of the evidence that Honan's reason for punishing Plaintiff was to retaliate against Plaintiff for reporting Midgett's sexual harassment allegations. Thus, Plaintiff's retaliation claim based upon his six-month prohibition from working off-duty assignments fails.

With regard to Plaintiff's removal from special assignments, Plaintiff offers evidence that he may have been removed from his special assignments in retaliation for reporting allegations against the Assistant Sheriff's husband. In her position as second in command at the Charleston County Sheriff's Office, Assistant Sheriff Coury-Smith had the authority to influence adverse employment actions taken against Plaintiff. There is evidence on the record that Assistant Sheriff Coury-Smith, despite a potential conflict of interest,[7] had oversight over the Internal Affairs Investigation of her husband, which investigation was the result of Plaintiff's protected activity. It was Assistant Sheriff Coury-Smith who removed Plaintiff from his position as Promotional Process Chair. A reasonable jury could find that Defendant, through Plaintiff's superior, acted with retaliatory intent and that the proffered explanation for Plaintiff's removal from special assignments

---

[7] The Charleston County policy on Nepotism states that "No person shall be hired for, and no employee shall be promoted, transferred or demoted to a position in which s/he would be directly or indirectly supervised by a member of his/her immediate family. . . ." Entry 63-2.

was pretextual.

With regard to Plaintiff's one day suspension without pay, Plaintiff argues that the punishment for his telling Sergeant Morris about negative comments made about her by another supervisor is pretextual because the information he passed on was truthful. Plaintiff further contends that his punishment for this informal discussion is inconsistent with Plaintiff having previously been reprimanded for formally reporting discriminatory comments directly to Sheriff Cannon. Plaintiff contends that "you are damned when you do [formally] report [discriminatory comments] and damned when you don't" formally report discriminatory comments. Entry 63 at 17. Plaintiff has not shown by a preponderance of the evidence that the reason for his one-day suspension was pretextual. Plaintiff's speculation that his one day suspension was unfair because his comments were truthful and were made informally does not demonstrate pretext. Plaintiff does not contend that his actions were not in violation of the rumors and classified information policy of the Sheriff's Department, nor does Plaintiff contend that he did not make these comments. Thus, Plaintiff's retaliation claim based upon his one-day suspension fails.

Based on the foregoing, the court denies summary judgment on Plaintiff's retaliation claim.[8]

C.    <u>Constructive Discharge</u>

Plaintiff objects to the Magistrate Judge's grant of summary judgment on his constructive discharge claim. The Magistrate Judge found that Plaintiff could not establish a claim for constructive discharge because he cannot show that his working conditions were intolerable. In

---

[8]    Defendant requests that the court adopt the finding of the Magistrate Judge that Plaintiff's claims of retaliatory acts that occurred after October 26, 2007 are time-barred. Because the court has found that the only claims that survive summary judgment are those based upon acts that occurred prior to October 26, 2007, this issue is moot.

addition, the Magistrate Judge found that Plaintiff had not exhausted his administrative remedies. The court will address each of these issues.

1.  *Whether Plaintiff Can Establish a Claim for Constructive Discharge*

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997). To establish a claim for constructive discharge, a plaintiff must show: 1) deliberateness of an employer's action, and 2) "intolerability of the working conditions." *Id.* "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). A plaintiff must provide "proof of the employer's specific intent to force an employee to leave." *Id.* A court may infer intent from circumstantial evidence, including a failure to act in the face of known intolerable conditions. *Id.* Intolerability of working conditions is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Id.* "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Id.* However, an employee is not "guaranteed a working environment free of stress." *Id.* This is to avoid transforming the employment discrimination laws into "a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." *Id.*

With regard to a deliberate intent to force Plaintiff to retire, the court finds that Plaintiff's evidence is sufficient to survive summary judgment. Stanley admitted to telling Plaintiff that he did not want Plaintiff in his division and that "[i]f [he] could get rid of [Plaintiff], [he] would." These statements, in conjunction with the LOIs and discipline issued to Plaintiff, provide sufficient

circumstantial evidence that Stanley may have intended to force Plaintiff to retire.

The court agrees with the Magistrate Judge, however, that Plaintiff has not established intolerability of conditions. In the court's view, the discipline received by Plaintiff, a total of four days of suspension from duty and a six-month prohibition from working off-duty assignments, would not have compelled a reasonable person to retire. In fact, Plaintiff remained in his position for several months while applying for jobs with other police departments indicating that the conditions were not truly intolerable. There is no evidence that Plaintiff was forced to resign because his employer imposed unreasonably harsh working conditions in excess of those faced by his co-workers.

2.     *Whether Plaintiff has Exhausted His Administrative Remedies*

The Magistrate Judge found that Plaintiff's constructive discharge claim was barred because Plaintiff never presented it in a complaint for administrative review. Plaintiff contends that his constructive discharge claim is reasonably related to his original charge of discrimination based on retaliation such that he need not separately exhaust his administrative remedies for his constructive discharge claim. The court disagrees.

Before bringing suit for constructive discharge under Title VII, a plaintiff must exhaust his administrative remedies. *See Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005). The allegations included in an administrative charge of discrimination typically operate to limit the scope of any subsequent lawsuit. *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976). However, discrimination claims "reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may [also] be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (citing

*King*, 538 F.2d at 583). The Supreme Court has indicated, however, that a claim for constructive discharge is not necessarily saved by this "continuing violations" doctrine. *Spencer*, 147 F. App'x at 375 (citing *Morgan*, 536 U.S. 101 (2002) (indicating that discrete acts such as termination and failure to promote require exhaustion)). The Fourth Circuit has found constructive discharge is a discrete discriminatory act requiring administrative exhaustion. *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237-38 (4th Cir. 1987). Because constructive discharge is a discrete discriminatory act subject to administrative exhaustion and this claim was not included on Plaintiff's charge of discrimination, this claim must be dismissed for failure to exhaust administrative remedies.

D.    Wrongful Discharge Against Public Policy

The Magistrate Judge indicated that Plaintiff's claim for wrongful discharge against public policy fails for the same reasons as Plaintiff's constructive discharge claims. Plaintiff did not object to this recommendation. Thus, the court reviews this ruling for clear error. *Diamond*, 416 F.3d at 315.

In *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law." *Id.* at 216; *see also Culler v. Blue Ridge Elec. Coop.*, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law." *Barron v. Labor Finders of South Carolina*, 682 S.E.2d 271, 273 (S.C. Ct. App. 2009). However, the South Carolina Supreme Court has explicitly held that "[w]hen a statute creates a substantive right and

provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." *Palmer v. House of Blues Myrtle Beach Rest. Corp.*, No. 05-3301, 2006 WL 2708278, at *3 (D.S.C. Sept. 20, 2006) (citing *Lawson v. South Carolina Dep't of Corr.*, 532 S.E.2d 259 (2000); *Dockins v. Ingles Mkts., Inc.*, 413 S.E.2d 18, 19 (1992)).

The court finds that Plaintiff's cause of action fails for two reasons. First, Plaintiff has failed to identify a public policy violation with respect to this claim. Second, as evidenced by Plaintiff's claim for constructive discharge in violation of Title VII, Plaintiff has a statutory remedy for his termination claim. Under *Palmer*, Plaintiff is limited to that remedy. *See also Heyward v. Monroe*, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998) (finding that Plaintiff's public policy termination claim was appropriately dismissed because "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case.").

E.      Hostile Work Environment

The Magistrate Judge found that Plaintiff could not establish a hostile work environment claim because Plaintiff did not allege that the hostile work environment was based upon race or gender. Because Plaintiff did not object to this recommendation, the court reviews this ruling to satisfy itself that there is no clear error on the face of the record.

The court has carefully reviewed the record and concurs in the Magistrate Judge's conclusion. To state a hostile work environment claim under Title VII, Plaintiff must allege that: (1) he experienced unwelcome harassment; (2) the harassment was based on his gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and

create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Plaintiff does not allege in his complaint that his hostile working environment was based upon gender, race, or age. Therefore, this claim fails as a matter of law.

F.     Breach of Contract

The Magistrate Judge found that Plaintiff's breach of contract claim must fail because Plaintiff has not offered proof of an employment contract or handbook, nor has he pleaded a handbook claim. Plaintiff did not object to this recommendation and the court reviews this ruling to satisfy itself that there is no clear error on the face of the record. The court has carefully reviewed the record and concurs in the Magistrate Judge's assessment.

G.     Claims Under § 1981

In the complaint, Plaintiff makes several claims pursuant to 42 U.S.C. § 1981. While the Report and Recommendation did not specifically address claims under § 1981, the court finds it prudent to do so. In *Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989) the Supreme Court held, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units. . . ." *Jett,* 491 U.S. at 771. Although other holdings from *Jett* were abrogated by the Civil Rights Act of 1991, this aspect of the Court's ruling in *Jett* remains in effect. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156, n.1 (4th Cir. 1995) (As to the ruling that § 1983 is the exclusive remedy against a governmental actor for violations of § 1981, "we do not believe this aspect of *Jett* was affected by the Civil Rights Act. of 1991."). As a result, any claim pursuant to § 1981 fails.

## III. CONCLUSION

The court's March 31, 2010 order (Entry 84) is vacated.  The Charleston County Sheriff's office is dismissed as a defendant in this case because it is not *sui juris*.  Defendants' motion for summary judgment (Entry 57) is **granted** as to all causes of action except Plaintiff's claim for retaliation under Title VII.  At trial, Plaintiff's retaliation claims will be limited to those based upon Plaintiff's removal from special assignments.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

August 16, 2010
Columbia, South Carolina